This case is number 2010-7110, Cardwell v. Secretary of Veterans Affairs, Mr. Carpenter. May it please the Court, Kent Carpenter appearing on behalf of Mr. Lorenzo Cardwell. Mr. Cardwell appeals the decision of the Veterans Court indicating that it did not have jurisdiction to consider the issue presented by Mr. Cardwell to the Veterans Court. We believe that the issue of entitlement to an extra scheduler rating was part and parcel of the rating assigned to his service-connected disability, which he had been litigating with the VA since 1996. The decision by the Veterans Court is inconsistent with this Court's decisions in Roberson and in Comer that a claim involving an extra scheduler rating for a total rating based upon unemployability is not separate from. Is this case different from Roberson and Comer? This case had an express TDIU claim that he withdrew, and that wasn't the case in Roberson and Comer, was it? No, but he did reassert that TDIU claim during the course of the prosecution of his claim and... And that's still pending? And that's still pending. But both are still pending, Your Honor, up to the time of the Board's decision. How is something that he withdrew still pending? Because he reasserted it. He withdrew the issue. He did not withdraw the claim. The issue of entitlement to an extra scheduler rating is part and parcel of his claim. At one point in time, because he was misinformed that he could not qualify because he didn't meet the scheduler requirements, he decided to withdraw it. He is a pro se claimant. He simply did not understand correctly that he could be entitled to that without meeting the scheduler requirements. Later, when he was ultimately... He ultimately reestablished that, and in point of fact, he was eventually awarded an additional disability for depression that was related to his underlying condition. As a consequence, this continuous claim from 1996 always included his entitlement to a total rating based upon unemployability. He withdrew that issue from his appeal, and then he reasserted it. And it seems to me, Your Honor, that consistent with this Court's decision in both Roberson and Comer, what is at issue here is whether or not the Board erred by failing to adjudicate that. Was that or was that not reasonably raised? It was reasonably raised because he asked a second time, and it was reasonably raised... But they're still adjudicating the second time. They're adjudicating it now. It hasn't been finally resolved. The Board hasn't shirked its obligation to adjudicate after he re-raised it. I believe they did, Your Honor, because at the time in which it was... Aren't they deciding it right now? Actually, they've already decided it and decided it adversely, and it's back before, but it's being treated as a new claim. It is not a new claim. It is part and parcel of this claim. What they are adjudicating is the new claim that they received in 2005. This claim started in 1996. What makes this case identical to Comer is that ultimately this is about the effective date if there is an award. He withdrew the claim. No, he did not, Your Honor. He withdrew the issue. He withdrew the issue of TDIU and said, Board, don't consider this. That's what the withdrawal means. And then the circumstances changed, Your Honor. He withdrew it because as a pro se claimant, he was misled that he could only qualify for that condition if he met the scheduler requirements. That is simply not the law. He is entitled to consideration of an extra scheduler rating under the second subsection of 4.16 whether he meets the scheduler requirements or not. But more importantly in this case, two things fundamentally changed. One, they added depression. When they added depression as a secondary condition, his 40% rating and his 30% rating qualified him for the scheduler requirements for IU. He didn't understand that, but he did understand that he was still unable to work. The Board should have understood that when that matter came before the Board in the decision that was appealed to the Veterans Court. They never addressed IU. In addition to that, he additionally qualified independent of the depression award when the Board added two additional secondary disability ratings, which in combination with the 40% rating added to a singular condition rated at 60% because all of those conditions under 4.16 are considered as part and parcel of a single disability because they all have the same etiological base. And in fact, the depression is part of the same etiological base. So this veteran qualified, had this issue in front of the Board on the record, and instead of deferring the determination as to what the correct rating is for his service-connected disability for his pending claim from 1996, they disposed of it. That was error. At the very least, they should have deferred it and said this issue is back before the agency re-raised on the question of unemployability. The favorable actions that we have taken have allowed the veteran to once again meet the scheduler requirements, and this matter will not be finally disposed of on this claim, the 1996 claim, until you determine whether or not he is or isn't entitled to eligibility for an extra scheduler rating. Had that happened, Mr. Cardwell would not have had to appeal to court, would not have had to appeal to this court, and would have been able to take that issue back before the agency and then come back before the Board on his 1996 claim as to whether or not the issue of his entitlement to an extra scheduler rating has in fact been in existence since 1996, that he has been unable to work for due to his service-connected disabilities. That is what was the error here, and that was the failure to adjudicate. What Roberson was all about was the failure to adjudicate. The Board had this issue. With all due respect, Mr. Carpenter, what Roberson and Comer are about are giving the pro se claimants who don't use the specific words TDIU the benefit of the doubt when they present evidence of their unemployability to give them the benefit of the doubt and look behind what they actually use in terms of the words that characterize their claim to give them the benefit that they're raising this claim. He doesn't need that benefit. He raised it in express words, and then he withdrew it just as expressly. Roberson and Comer are about giving the benefit to the pro se claimant that he may not know the right words to use. But here he knew them. He used them. He withdrew it. I don't see how those cases help your cause at all. Because, Your Honor, it has to do with the effective date. What was at issue in Roberson? What was at issue in Comer? I mean, that's the reason why you're arguing it. But that still doesn't distinguish, still doesn't bring this case under Roberson. I believe it does, Your Honor, because if you look at the statement of the case at the joint appendix at page 52, they identified the claim for individual unemployability as having been received in 2004. They treated that as a separate claim. They even treated it as a separate claim before it was withdrawn. This claim started in 1996. If Mr. Cardwell prevails on his claim for a total rating based upon unemployability, he will face precisely what Mr. Roberson and Mr. Comer face, and that's another litigation about the effective date for unemployability. All Mr. Cardwell is saying is I have one claim. That one claim should be adjudicated all at the same time so I don't have to relitigate whether or not my claim did or didn't start in 1996. He attempted to bring that to the attention of the court when he appealed the board's decision, which ignored it. The court below said they didn't have jurisdiction. That jurisdictional determination is simply wrong. They did. Mr. Cardwell was adversely affected by the failure of the board to adjudicate that question because it was part and parcel of the initial rating to be assigned Mr. Cardwell's 1996 claim, which took a considerable length of time before it was even granted, and then he had to litigate it to get it raised from 20 to 40, from 40 to include the two additional extremity ratings in this last board decision, and to add to it depression. All of these things, including the inability to work, are part and parcel of the claim that began in this case in 1996. I will reserve any further time for our rebuttal. We'll save the rest of your time, Mr. Carpenter. Mr. Goodman. Good morning, Your Honors, and may it please the Court. Despite the complicated procedural history in the case, the question before the Court is actually quite straightforward. The question before the Court today is whether a pro se plaintiff may withdraw a TDIU claim. There's no dispute that Mr. Cardwell explicitly withdrew that claim. Therefore, we turn to the regulations. The regulations say an appeal may be withdrawn as to any or all issues involved in the appeal. No, this isn't the real question. Whether if it's reinstated after withdrawing by the pro se state plaintiff, whether it's deemed for purposes of effective date to have been made initially. Under 38 CFR 20.204C, the effect of filing the regulations state that a withdrawal of an appeal will be deemed a withdrawal of the notice of disagreement and, if filed, a substantive appeal as to all issues to which the withdrawal applies. Withdrawal does not preclude filing a new notice of disagreement and, after a statement of the case is issued, a new substantive appeal as to any issue withdrawn. So there was a procedure by which Mr. Cardwell could have reinstated, if he had done so within that time period, he had filed a new notice of disagreement. He didn't do so. He waited beyond the year after the regional office decision, and, therefore, he was not able to reinstate under this provision. Now, Robeson and Comer were involved in implied claims at TDIU, right? Yes, Your Honor. Here there was an express one. That was withdrawn. Was there also an implied one that was still pending? The withdrawal applies to issues, not to claims. He said he didn't want the board to consider his entitlement to individual unemployability, and that's the issue that was withdrawn. Whether it was raised in one claim or another claim or all the claims, the issue is what he took off the table. Whether express or implied? Whether express or implied. He said, I don't want the board to consider TDIU. The claim was not withdrawn. The same piece of paper that he filed with the VA that said, please consider me for unemployability, also said, and I'm depressed. And the regional office went ahead and assessed that and determined that he, in fact, did have depression. They gave him a 30% rating for that depression. So the claim wasn't withdrawn. It's not a question of claims. It's a question of issues. And as the regulations clearly state, any issue can be withdrawn. Now, is there a serial number, a filing number associated with these claims? And was there a new one attached to the new claim that they considered applied to TDIU? I'm sorry, Your Honor. I'm not sure I understand the question. Well, every action at every level has a serial number. It's all categorized based on his Social Security number, Your Honor. Oh, Social Security number. Yes, Your Honor. I see. So they keep it all together based on the VA file numbers, which is the same as the Social Security number. They track it all together. What he withdrew was the issue. And again, turning back to the regulation, once the issue of TDIU is withdrawn, there's no longer a Notice of Disagreement anywhere within his records as to that issue. That's under the regs. That's under the regs, Your Honor. And without a Notice of Disagreement, the Board has no jurisdiction to consider TDIU, whether explicitly raised, implicitly raised. The Notice of Disagreement is the basis for the establishment of the Board's jurisdiction in the first place. Exactly what's supposed to happen happened in this case. The regional office issues a decision as to maybe a couple of different issues brought up. And here there were a couple of different regional office decisions. And then he filed, Mr. Carbo filed Notices of Disagreement as to both the TDIU and as to his lower back pain. And then the regional office, as it's supposed to under the regulations, issues statements of the case explaining exactly why he's not entitled to the various things he's asking for and why he's entitled to what he's been granted. And at that point, under the regulations, he has to then perfect his appeal as to those issues he wants to appeal and say which issues he doesn't want to appeal. And he said explicitly, I want to withdraw TDIU. At that point, unless he uses the savings provision and within a year files another Notice of Disagreement, the Board simply lacks jurisdiction to consider the issue. And it's not a question of sympathetically reading any of his filings. There's no doubt here that the regional office and the Board sympathetically read all the filings. Again, the regional office didn't say the whole claim was withdrawn but only the TDIU and went ahead and granted him an award for depression. And then the Board said you get 10% for each of your legs as well. So there was a lot of sympathetic reading going on here. That's not in question. But the Board didn't have jurisdiction to consider TDIU because there was no Notice of Disagreement anywhere. And it wasn't until 2007 he said, you know, I would like you to consider TDIU. At that point, it has to be a new claim. That's the most sympathetic thing the regional office can do with that piece of paper because there's nothing currently in the record. So there's no Notice of Disagreement. The Board can't consider it, so the regional office says there's a new claim here and will consider that on its merits, and they did so. And they decided he's not unemployable as it turns out, but that's not before the court today. So there's simply a question of the Board's jurisdiction. There was no Notice of Disagreement that the Board could read sympathetically. There's simply no way that Mr. Cardwell could have his issue considered by the Board at that time. If there are no further questions, Your Honors, we respectfully request that you affirm the decision of the Veterans Court. Thank you, Mr. Goodman. Mr. Carpenter. It seems to me that the VA wants to have it both ways. They want to claim that this is about claim versus issue and that if he withdraws his issue then he is forever prohibited from doing that. And then they want to pretend, even though they acknowledge that he said, well, I really am still unable to work due to my service-connected disabilities, that that somehow is not reasonably raising that issue for consideration by the Board and that it's a new claim. See, they wanted to start it over in 2004. They want to start it over in 2007 when this is part and parcel of a 1996 claim. See, that's why I was asking. This was considered a new claim after he asked to have it considered again. And I was looking to see whether there's a claim number. There isn't, Your Honor. There isn't. Unfortunately, they just used this one. So it's not a question of, well, it's the same claim number or a different one. Right. Frankly, if they would do that, it would be a little easier to track these things, but unfortunately they do it based upon- In terms of evidence, it might have been meaningful. Well, except, Your Honor, that under 3.156B, if he submits new and material evidence during the pendency of his appeal, then that evidence is supposed to be considered under the VA's regulation with the matter that began at the time that the appeal period began. Now, that was in 2007. Forget about 2004 and 2005 when he reasserted for the third time his desire for a total rating based upon unemployability. That was information that the board had in the record of proceedings when it was before it. The VA would suggest that this is about their regulation and the withdrawal of the appeal. This is not about the withdrawal of the appeal. The court below didn't say he withdrew the appeal. The court said they didn't have jurisdiction. That jurisdictional determination is at odds with this court's decision in Roberson and in Comer because this court said that if it is reasonably raised, and Judge Lori, you asked the question as to whether or not there wasn't another explicit claim. There was another explicit claim where he put it before them again. They tried to start this anew in 2004. They've now started it anew in 2007, but it is part and parcel of the 1996 claim. That's what Mr. Cardwell wanted the court to do when he said, but they didn't adjudicate, they didn't consider my entitlement to the maximum rating available under 416A, and I was entitled to that. The court should have vacated the board's decision as to the maximum rating, the denial of a less than total rating, because there was the issue of extra scheduler that was still pending. Had they done that, then that issue would have been then rejoined. What the VA wishes to do is to say, well, we have issues here, and if you withdraw an issue, then you have somehow dismembered that issue from the claim. That can't possibly be the law. The law under Roberson and Comer is that there is no separate claim for TDIU. So what was withdrawn if there is no separate claim? What was withdrawn was he said he didn't want them because he had been told wrongly that he didn't qualify. This court in Comer says this should not be a trap for the unwary, but that's precisely the trap that was set for Mr. Cardwell in this case, whether intended or not. He didn't get the benefit of the adjudication of this case before the board, and the board was required to consider all issues reasonably raised. This issue was reasonably raised. This issue was part and parcel of his 1996 claim and should have been considered by the Veterans Court. If there's further questions, thank you very much. Thank you, Mr. Carpenter and Mr. Goodman. The case is taken under submission. All rise. The honorable court is adjourned until tomorrow morning at 10 a.m.